**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

J.D., a minor, by and through her mother, Jill Doe

      Plaintiff,

v.

Board of Trustees for the Colorado School for the Deaf and Blind,
Colorado School for the Deaf and Blind,
Jennifer Wright, in her individual capacity,
Bryan Zigler, in his individual capacity, and
Kathy Emter, in her individual capacity

      Defendants.

---

## COMPLAINT WITH JURY DEMAND

---

Plaintiff J.D., a minor, by and through her mother, Jill Doe, by and through counsel, Kishinevsky & Raykin, LLC, hereby respectfully files this Complaint with Jury Demand against the Board of Trustees for Colorado School for the Deaf and Blind, Colorado School for Deaf and Blind, and Jennifer Wright, Bryan Zigler, and Kathy Emter, in their individual capacities, and states on information and belief as follows. This action seeks appropriate damages and costs.

### I.      JURISDICTION AND VENUE

1.      The Court has jurisdiction over this complaint pursuant to 28 U.S.C. §§ 1331, and 1343.

2.      Plaintiff, Jane Doe ("J.D.") and her mother, Jill Doe ("mother" or "Ms. Doe"), are residents of El Paso County, Colorado.

1

3.    Defendant Colorado School for the Deaf and Blind ("CSDB") is a governmental entity, an education institution of the State of Colorado, created by C.R.S. § 22-80-102, with its principal place of business in El Paso County, Colorado.

4.    Defendant Board of Trustees for the Colorado School for the Deaf and Blind ("Board") is a governmental entity created within the Colorado Department of Education ("CDE") pursuant to C.R.S. § 22-80-103(1), with powers and duties to act for the CDE to govern and operate CSDB.

5.    Defendants Bryan Zigler, Jennifer Wright, and Kathy Emter were employees of CSDB at the time of the wrongful acts alleged.

6.    Venue is proper pursuant to 28 U.S.C. § 1391(b), as the wrongful acts alleged by the Plaintiff occurred in whole or in part in Colorado.

## II.    PARTIES

7.    J.D. is a minor student currently enrolled with Defendant CSDB.

8.    J.D. is disabled within the meaning of Section 504 of the United States Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq*.

9.    J.D.'s disabilities substantially impair major life activities including, but not limited to, hearing, eating, working, learning, and caring for herself.

10.    Defendant CSDB is a recipient of federal financial assistance subject to the requirements of Section 504. 29 U.S.C.§ 794.

11.    Defendant CSDB is a public governmental entity subject to the provisions of the ADA. 42 U.S.C. § 12131(1).

2

12.    Defendant Board is authorized to apply for and receive federal grants and financial assistance. C.R.S. § 22-80-103(4)(d).

13.    Defendant Bryan Zigler is a former employee of CSDB.

14.    Defendant Zigler was employed as a science teacher at CSDB. Defendant Zigler stopped working at CSDB in October 2024.

15.    Defendant Jennifer Wright is employed at CSDB as principal and was employed as principal during the wrongful acts alleged by Plaintiff.

16.    Defendant Kathy Emter is employed by CSDB as its Director of Special Education and Title IX Coordinator and was employed as Director of Special Education and Title IX Coordinator during the wrongful acts alleged by Plaintiff.

### III.    FACTUAL ALLEGATIONS

**A.  J.D.'s Background**

17.    J.D. is currently thirteen years old and in eighth grade.

18.    J.D. attends CSDB.

19.    J.D. has attended CSDB annually since 2016. J.D. enrolled at CSDB at the age of four, through the special education process.

20.    J.D.'s current public school district of residence is Cheyenne Mountain School District 12.

21.    J.D.'s district of residence during the 2024-2025 school year was Colorado Springs School District 11.

22.    CSDB and its employees have had knowledge of J.D.'s disabilities since November 9, 2016.

23.    J.D. is Deaf. Her hearing loss was identified at approximately one-month of age.

24.    J.D.'s hearing loss is caused by Johanson-Blizzard Syndrome.

25.    Johanson-Blizzard Syndrome ("JBS") is a rare genetic disorder that affects multiple organ systems of the body. Many symptoms present at birth or early childhood.

26.    Symptoms of JBS manifest differently from person to person; however, characteristic features include malabsorption of fats and nutrients due to abnormal development of the pancreas, failure to grow and gain weight at the expected rate during early childhood, and abnormalities of the teeth, skull and facial region.

27.    Due to JBS, J.D. has bilateral profound sensorineural deafness.

28.    Also due to JBS, J.D. requires a gastronomy tube through which she receives regularly scheduled tube feedings.

29.    The gastronomy is a surgical opening into the stomach. A gastronomy tube is a flexible tube inserted into the surgical opening.

30.    J.D.'s gastronomy tube was placed through surgery on April 17, 2018.

31.    J.D. has an individual health care plan to address her needs related to her JBS diagnosis and the gastronomy tube.

32.    J.D.'s disabilities impair major life activities including, but not limited to, hearing, eating, working, learning, and caring for herself. Due to her hearing loss, J.D. has cochlear implants, which she used regularly before transferring to CSDB in 2016.

33.    To use the implants, J.D. must also use external processors. Since transferring to CSDB, J.D. has not worn regularly worn processors for the implants, rendering them ineffective.

34.     Accordingly, J.D. primarily communicates through American Sign Language ("ASL").

35.     J.D. has significant educational and communicative delays. For instance, as of October 2024, both J.D.'s reading and language use skills were assessed at a second (2nd) grade level.

36.     J.D.'s ASL skills were assessed through the Kendall Conversational Proficiency Level Assessment ("P-Levels") during the 2024-2025 school year.

37.     P-Levels are developmental scales of communicative competency. Scores between 0+ to 3+ indicate infancy-level skills; scores of 4+ or 5+ indicate kindergarten-level skills; and scores of 6+ and 7+ indicate the skill level of a mature adult.

38.     As of November 2024, J.D.'s P-Level rating was 3+. At that level, J.D. was able to communicate through phrases or short sentences, use ASL in a way others can follow, and discuss transitional ideas, such as identifying where things are and where they are going.

39.     J.D.'s 3+ level indicates she is unable to engage in more complicated communication, such as understanding and being understood by adults, discussing past and future events, relating complicated stories (such as identifying, who, what when, where, and why), or engaging in abstract communication.

40.     Due to her communication deficits, J.D. communicates like a much younger child, and primarily uses short phrases or single words such as "no" or "don't want."

41.     J.D. also communicates through symbols, such as identifying emotions by drawing happy or sad faces.

42.     J.D.'s disability severely impacts her ability to communicate her wants, needs, and desires.

43.     J.D.'s disability also makes her a target for bullying and exploitation.

**B.  CSDB has allowed J.D. to be sexually assaulted, harassed, and exploited while at school.**

44.     During the 2024-2025 school year, J.D. was sexually assaulted, harassed, and exploited by other students at school.

45.     Two other male students at CSDB, referred to as L.S. and A.J. herein, have repeatedly sexually assaulted, harassed, and exploited J.D. while at school.

46.     Upon information and belief, L.S. and A.J. are individuals with disabilities within the meaning of Section 504 and the ADA.

47.     On one occasion during the 2024-2025 school year, L.S. pulled J.D.'s pants down and pushed her towards A.J., saying "you have to date."

48.     Both J.D. and A.J. said "no," but L.S. forced J.D. to sit on A.J.'s lap.

49.     This incident occurred at CSDB in the hallway outside the front office.

50.     On four occasions during the 2024-2025 school year, A.J. forced J.D.'s head down to put his penis in her mouth.

51.     These incidents occurred in various locations around the CSDB building.

52.     J.D. told A.J. "no" each time.

53.     J.D. reported that it tasted awful.

54.     L.S. also engaged in repeated sexual misconduct towards J.D. and other CSDB students throughout the 2024-2025 school year.

55. In one such incident on the CSDB's playground, L.S. forcibly removed J.D.'s shirt and touched her breasts without her consent.

56. J.D. was embarrassed and upset by the incident.

57. On several other occasions, L.S. touched J.D.'s genitals with both his hand and mouth while at CSDB.

58. During those incidents, J.D. did not consent and specifically communicated her lack of consent with expressions and gestures. However, L.S. ignored J.D.'s lack of consent and continued as if he did not care.

59. On or about September 18, 2024, J.D. was sexually assaulted in Defendant Bryan Zigler's classroom, while he was present.

60. Defendant Zigler was a science teacher at CSDB.

61. On or about September 18, 2024, L.S. asked A.J. whether he and J.D. were dating. A.J. and J.D. told L.S. that they were not dating.

62. L.S. told A.J. and J.D. that they "must date."

63. L.S. repeatedly told A.J. and J.D. that they "must" engage in sexual contact.

64. J.D. and A.J. both told L.S., "no."

65. L.S. forced J.D. and A.J. to go under a table in the back of Mr. Zigler's classroom.

66. J.D. and A.J. both said "no" and "don't want."

67. J.D. got out from under the table, but L.S. forced her back under the table.

68. L.S. forced J.D. to engage in oral sex with A.J. by grabbing her head and forcing it to A.J.'s genitals.

69.     L.S. forced J.D. to touch A.J. by grabbing her arms and directing her hands on A.J.'s body and genitals.

70.     L.S. forced J.D. to remove her pants.

71.     J.D. told A.J. and L.S. "no;" however, L.S. told her she had to touch A.J.'s genitals.

72.     A.J. initially also said "no," but after L.S. continued to coerce them, he said "okay."

73.     A.J. also touched J.D. underneath her clothes.

74.     Throughout this assault, J.D. was scared, nervous, embarrassed, and shaking.

75.     Throughout this assault, Defendant Zigler was in the front of the classroom, working on his laptop. Defendant Zigler gave the students free time because he needed to do his own work.

76.     Other students were in the classroom and observed the assault.

77.     On September 18, 2024, a male student who witnessed the incident reported it to Allison Sambrook, school counselor.

78.     Ms. Sambrook informed Defendant Katherine Emter, Director of Special Education and Title IX Coordinator, of the incident that same day.

79.     Defendant Emter conducted several student interviews on or about September 18, 2024.

80.     Defendant Emter first interviewed a male CSDB student, "Student 1," who heard of the sexual incident from other students.

81.      Defendant Emter then interviewed another male CSDB student, "Student 2," who also heard of the sexual incident from other students.

82.      Both Student 1 and Student 2 identified that the incident occurred during Defendant Zigler's class session on or about September 18, 2024, while Defendant Zigler was present.

83.      Defendant Emter then interviewed A.J. He confirmed that the events were as described above.

84.      Defendant Emter then interviewed J.D. She described the events in Defendant Zigler's class as described above.

85.      On the afternoon of September 18, 2024, CSDB called Ms. Doe and informed her that J.D. may or may not have been involved in an incident at school that day and may or may not need to speak with her mother.

86.      CSDB did not inform Ms. Doe of the nature of the incident, nor did it disclose details. Ms. Doe did not learn of the sexual assault until law enforcement contacted her on or about September 21, 2024.

87.      On September 21, 2024, Defendant Emter reported the assault to law enforcement.

88.      September 21, 2024, was a Saturday, meaning that when law enforcement received Defendant Emter's report, school had already finished for the week. Accordingly, Officer Seth Sheppard of the Colorado Springs Police Department responded to Defendant Emter's home.

9

89.    Defendant Emter informed Officer Sheppard that J.D. and A.J. were sexually assaulted by L.S. while at CSDB.

90.    Defendant Emter informed Officer Sheppard of the student interviews she conducted.

91.    Also on September 21, 2024, law enforcement contacted Ms. Doe to discuss the assault.

92.    This was the first time that Ms. Doe learned that J.D. was sexually assaulted.

93.    Once learning that J.D. had been sexually assaulted, Ms. Doe immediately took J.D. to the doctor. However, the doctor was unable to determine the extent of J.D.'s injuries due to the amount of time that had passed.

94.    On October 15, 2024, MacKenzie Phillips, of the Colorado Springs Police Department, conducted a forensic interview with J.D.

95.    An ASL interpreter was used to conduct the interview.

96.    During the interview, J.D. explained A.J. and L.S.'s actions as described above.

97.    J.D. also revealed that she had been the victim of repeated, unwanted sexual contact from L.S. and A.J. throughout the 2024-2025 school year, as described above.

98.    Throughout the forensic interview, J.D. was emphatic that she told A.J. and L.S. "no" over and over again.

99.    Following the forensic interview, J.D. was emotionally distraught.

100.    She refused to discuss the interview with her mother or sister.

101.    On October 23, 2024, Officer Phillips interviewed another CSDB student, "Student 3." At that time, Student 3 was also twelve years old.

10

102.    Student 3 reported that J.D. had been the victim of bullying from boys at CSDB and that they had forced her to do inappropriate things.

103.    Student 3 reported one incident at CSDB where male students forced J.D. into the boys' bathroom against her consent.

104.    Student 3 also identified that a friend witnessed the boys force J.D. to touch the boys' genitals.

105.    On October 23, 2024, officers including MacKenzie Phillips, Nikki Patton, and Michael Ilizaliturri conducted an interview with A.J.

106.    A.J. admitted that during eighth period on or about September 18, 2024, he went underneath a table with J.D. at the direction of L.S.

107.    A.J. also confirmed that L.S. directed J.D. to administer oral sex to A.J.

108.    A.J. reported that J.D. was intimidated by L.S. during the incident.

109.    A.J. reported that he felt forced to engage in the sexual contact with J.D., and that L.S. threatened to take his snacks if he did not comply.

110.    L.S.'s actions were not isolated incidents and were known to CSDB before and after his exploitation of J.D. on September 18, 2024.

111.    On multiple occasions, before September 18, 2024, L.S. exposed his genitals to other students on CSDB buses.

112.    L.S. also previously possessed and displayed pornographic images while at a school.

113.    For example, another student, "Student 4", reported to law enforcement that L.S. frequently had showed pornographic material to other students while at CSDB.

114. Ms. Doe learned of L.S.'s distribution of pornographic material on February 21, 2025; however, Student 4 reported that it had occurred multiple times throughout the year.

115. Once Ms. Doe learned of Student 4's report, she shared it with CSDB on February 24, 2025.

116. L.S. also touched other students sexually without their consent, including another classmate of J.D.'s, "Student 5."

117. Student 4 also reported that L.S.'s actions were not isolated to just herself and Student 5, but that he had made three other female students uncomfortable throughout the school year through inappropriate sexual behavior.

**C. J.D. has suffered severe, lifelong impacts because of the sexual assaults, harassment, and exploitation perpetrated against her during the 2024-2025 school year.**

118. J.D. endured severe trauma from the incident, including significant undermining of her self-image, self-worth, and self-esteem.

119. J.D. also endured social isolation and ostracism from her peers following the incident.

120. Following the assaults, J.D. exhibited significant dysregulation, characterized by random anger outbursts and general irritability.

121. From September 20, 2024, through March 31, 2025, J.D. did not attend school in person.

122. Defendant Emter, as CSDB's Title IX Coordinator, was required to offer and coordinate supportive measures for J.D.

123. Defendant Emter failed to offer J.D. adequate and timely supportive measures during CSDB's Title IX investigation.

124. Defendant Emter and CSDB unreasonably delayed J.D.'s return to school by failing to timely develop an adequate safety plan or otherwise provide supportive measures.

125. While investigating the allegations, CSDB permitted L.S. to continue attending field trips and schoolwide events.

126. J.D. was supposed to attend a field trip with her classmates on September 26, 2024. However, Ms. Doe learned that CSDB was permitting L.S. to attend the field trip despite its ongoing Title IX investigation.

127. J.D. could not attend the September 26 field trip because L.S. was attending. In addition to concerns for J.D.'s physical safety, seeing L.S. would cause J.D. significant emotional distress.

128. That same day, Ms. Doe notified Defendant Wright that she was concerned for J.D.'s safety due to the lack of restrictions placed on L.S.

129. Instead of offering supportive measures or developing a safety plan, Defendant Emter told four CSDB staff that L.S. and J.D. could not be left alone together during the field trip.

130. Defendant Emter downplayed the seriousness of the safety concern, stating that all the seventh graders were having conversations about sex and "acting out things." Defendant Emter did not communicate that J.D. had been sexually assaulted.

131. During this time, J.D. submitted her schoolwork via email.

132. CSDB did not provide J.D. with any tutoring or other support during this time.

133. J.D. wanted to return to school but could not until the safety plan was finalized.

134. J.D. felt isolated, confused, and like she was being punished.

135.    J.D.'s confusion about her absences from school and the opinions of her friends and teachers worsened her distress and functional impairments.

136.    Moreover, J.D. does not process trauma like a non-disabled person. J.D.'s developmental delay mean that she processes her emotions and experiences in unique ways. Because of that unique development, J.D. is likely to exhibit trauma response symptoms as she passes through developmental milestones. Effectively, she will continue to experience the traumatic effects of L.S.'s and A.J.'s actions and Defendants' failures throughout her life.

137.    As a result, J.D. now requires ongoing therapy to support her recovery and emotional regulation.

138.    J.D. requires the assistance of an interpreter to participate in therapy sessions, as her therapist does not use ASL.

139.    J.D. has been diagnosed with post-traumatic stress disorder ("PTSD") and anxiety disorder since the assaults.

140.    CSDB unreasonably delayed J.D.'s access to school by failing to provide an adequate safety plan in a timely manner following CSDB's report to law enforcement.

141.    Following J.D.'s return to CSDB, she ran into L.S. and had a conversation with him on or about April 7, 2025. This was very distressing for J.D.

142.    Following J.D.'s return to CSDB, teachers reported that L.S. continued to interact with J.D., despite the safety plan.

143.    J.D., L.S., and A.J. all still currently attend CSDB.

14

144.    The safety plan provided by CSDB is insufficient. J.D. is still forced to see L.S. often during schoolwide events. Seeing L.S. at school causes J.D. to suffer severe emotional distress and upset.

i.    *The circumstance of Plaintiff's injury and the Defendants' conduct following the injury manifest Defendants' deliberate indifference to her federally protected rights.*

145.    Defendants knew that Plaintiff and CSDB students in general are vulnerable to sexual abuse due to youth, disability, and limited communication skills.

146.    Defendants CSDB and Board knew that L.S. had engaged in sexual misconduct in multiple instances with female students, including J.D., throughout seventh grade.

147.    Defendants CSDB and Board knew that L.S. had engaged in bullying of J.D. and other students throughout seventh grade.

148.    Defendants CSDB and Board failed to intervene to separate L.S. from J.D. and other students, or to otherwise intervene to protect its students from L.S.

149.    Defendants CSDB and Board failed to notify law enforcement proximate to learning that L.S. coerced and sexually exploited J.D. on September 18, 2024.

150.    Instead, CSDB did not make a report to law enforcement until three days later, on September 21, 2024.

151.    CSDB additionally failed to inform Ms. Doe that J.D. had been sexually assaulted. Instead, it told Ms. Doe that J.D. may have been involved in an incident on September 18, 2024.

152.    Because of Defendants CSDB's and Board's failures, Ms. Doe did not learn of the assault until law enforcement contacted her on September 21, 2024.

153. The response of Defendants CSDB and Board were clearly unreasonable and manifest deliberate indifference to ongoing sexual harassment.

154. Defendant Zigler was in the classroom when J.D. was sexually assaulted on September 18, 2024.

155. Defendant Zigler failed to take any action to intervene or protect Plaintiff while she was being sexually assaulted in his classroom.

156. Following the September 18 assault, Defendant. Zigler was placed on administrative leave. Defendant Zigler left CSDB in October 2024, and he started teaching at the Iowa School for Deaf in August 2025.

157. Defendant Zigler's lack of action was clearly unreasonable and manifested deliberate indifference towards J.D.'s sexual assault.

158. At all times relevant to this action, Defendant Wright has been CSDB's principal.

159. As principal, Defendant Wright's job duties include enforcement of CSDB's policies, ensuring student safety, and ensuring CSDB complies with applicable federal and state law.

160. As principal, Defendant Wright is responsible for disciplining CSDB students.

161. Defendant Wright failed to ensure that J.D. and other students were kept safe at CSDB.

162. Defendant Wright knew or should have known of L.S.'s ongoing sexual harassment of J.D. and other students at CSDB, as it occurred on school grounds, during the school day.

16

163.    Defendant Wright failed to intervene and stop L.S.'s ongoing sexual harassment and bullying.

164.    Defendant Wright failed to enforce CSDB's policies related to sexual assault and harassment.

165.    Defendant Wright failed to ensure that CSDB complied with applicable federal and state law.

166.    Defendant Wright failed to ensure that CSDB timely reported instances of assault to law enforcement.

167.    Defendant Wright failed to ensure that CSDB provided J.D. with a timely and adequate safety plan, further excluding her from the school environment.

168.    Upon information and belief, Defendant Wright chose not to discipline L.S. and A.J. for any of the assaults that occurred.

169.    Defendant Wright's acts and omissions, as CSDB's principal, were clearly unreasonable and manifested deliberate indifference towards the ongoing sexual harassment suffered by J.D. and other students at CSDB.

170.    At all times relevant to this action, Defendant Emter was CSDB's Title IX Coordinator.

171.    As Title IX Coordinator, Defendant Emter was responsible for ensuring that CSDB complied with Title IX and provided J.D. with supportive measures.

172.    Defendant Emter failed to ensure that CSDB complied with Title IX.

173.    Defendant Emter failed to offer timely and adequate supportive measures to J.D.

174.    Defendant Emter's acts and omissions were clearly unreasonable and manifested deliberate indifference towards J.D.'s rights under Title IX.

**D. CSDB has a long-standing history of inadequate training, policies, and procedures regarding student-on-student sexual assaults.**

175.    CSDB has a history of fostering sexual assaults by students on other students through its inadequate training, policies, and procedures.

176.    CSDB's history of fostering sexual assaults through its inadequate training, policies, and procedures has previously brought unwanted publicity on CSDB.[1]

177.    Some of CSDB's history of fostering sexual assaults by students on other students and related publicity led to the Report of the State Auditor dated January 24, 1990 ("1990 Audit").[2]

178.    The 1990 audit recommended that "Colorado should develop an education system in which services are provided primarily through the local school districts."

179.    The 1990 Audit determined that the CDE does not adequately oversee education for the deaf and/or blind students in Colorado.

---

[1] *E.g.*, Rick Sallinger & Robert Bosciewicz, *State Settles with Families of Children Assaulted at Colorado School for Deaf and Blind*, CBS NEWS (Jan. 12, 2016), available at: https://www.cbsnews.com/colorado/news/state-settles-with-families-of-children-assaulted-at-colorado-school-for-the-deaf-and-blind/

[2] COLO. STATE AUDITOR, *Colorado School for the Deaf and Blind Performance Audit* (Jan. 24, 1990), available at: https://www.google.com/url?sa=t&source=web&rct=j&opi=89978449&url=https://hermes.cde.state.co.us/islandora/object/co%253A20433&ved=2ahUKEwiOlsOTycqQAxUvODQIHTwdErYQFnoECBQQAQ&usg=AOvVaw0WB-BSYjp6k8HYvIGR3ZK7

180.     The 1990 Audit found that CSDB's "personnel practices and documentation of follow-up actions are not sufficient to ensure that students are protected from inappropriate or abusive acts."

181.     The 1990 Audit recommended that immediate change was needed at CSDB to address CSDB's failure to protect students from abuse.

182.     The 1990 Audit found:

Because of youth, handicap, residential isolation, and limited communication skills, CSDB students are particularly vulnerable to child abuse. The state is responsible to protect students from potential abuse. The School personnel practices and documentation of actions taken are inadequate to effectively protect students from abusive situations.

183.     The 1990 Audit reported that there had been 7 incidents of staff abuse of students, with no indication that CSDB took any responsive action in the previous 5 and a half years.

184.     The 1990 Audit reported that there had been 45 cases of inappropriate/abusive incidents between students, with one-third of those being sexually abusive behavior, in the previous five and a half years.

185.     The 1990 Audit reported that there was no documentation that CSDB did anything to protect its students from inappropriate student-on-student behavior, including sexual abuse.

186.     Since the 1990 Audit, there have been at least two cases against CSDB regarding student-on-student sexual abuse. *BPS v. Bd. of Trs. for Colo. Sch. for the Deaf & Blind*, No. 12-cv-02664-RM-KLM, 2015 U.S. Dist. LEXIS 123513 (D. Colo. Sept. 16, 2015); *MAP v. Bd. of Trs. for Colo. Sch. for the Deaf & Blind*, No. 12-cv-02666-RM-KLM, 2014 U.S. Dist. LEXIS 104021 (D. Colo. July 29, 2014).

19

187.    Both cases concern the sexual assault suffered by several CSDB students by another student while residing in CSDB's dorms.

188.    Both cases reveal that CSDB has a pattern of concealing, downplaying, and failing to report instances of student-on-student sexual abuse.

## IV.    LEGAL CLAIMS

### COUNT I

**20 U.S.C. § 1681 – Deliberate Indifference to Sexual Harassment,
in Violation of Title IX of the Education Amendments of 1972**
*Against Defendant CSDB and Defendant Board*

189.    Plaintiff realleges and incorporates, by reference, all previous paragraphs of the Complaint herein.

190.    Title IX of the Education Amendments of 1972 provides that no person shall be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance" based on their sex. 20 U.S.C. § 1681(a).

191.    Defendants CSDB and Board are recipients of federal funds within the meaning of 20 U.S.C. § 1681(a).

192.    A school recipient of federal funds may be liable under Title IX for its own conduct in being deliberately indifferent to student-on-student sexual harassment, if the school (1) has actual knowledge of (either through either notice of prior complaints or notice of current harassment), and (2) is deliberately indifferent to (3) harassment that is so severe, pervasive, and objectively offensive as to (4) deprive equal access to the educational benefits or opportunities provided by the school.

20

193. Defendants CSDB and Board were deliberately indifferent to the ongoing sexual assaults, exploitation, and harassment of Plaintiff leading up to the September 18, 2024, assault.

194. Defendants' deliberate indifference led to Plaintiff being assaulted on September 18, 2024.

195. Defendants CSDB and Board had actual knowledge of L.S.'s previous sexual misconduct, including exposing his genitals to other students on CSDB buses and previous inappropriate interactions with other students.

196. Neither Defendant made any effort whatsoever to put an end to L.S.'s sexual harassment of other students.

197. The conduct of Defendants CSDB and Board constitutes deliberate indifference, and wanton and reckless disregard for the rights and safety of Plaintiff.

198. Defendants CSDB and Board were deliberately indifferent to the sexual harassment of Plaintiff, with actual knowledge of the same, and said harassment was so severe, pervasive, and objectively offensive as to deprive Plaintiff of equal access to the educational benefits and opportunities of CSDB.

199. Plaintiff was deprived of access to CSDB's educational benefits and opportunities because of the ongoing and severe sexual assaults, exploitation, and harassment leading up to the September 18, 2024, assault.

200. Plaintiff suffered and continues to suffer from emotional distress regarding her experience at CSDB, her well-being, and safety.

201.    Defendants CSDB and Board, by and through its agents and employees' differing treatment of similarly or equally situated students on the basis of sex is engaging in unlawful and invidious discrimination.

202.    Plaintiff suffered damages as a result of Defendants' deliberate indifference to her rights under Title IX leading up to the September 18, 2024, assault.

## COUNT II

**20 U.S.C. § 1681 – Deliberate Indifference to Sexual Harassment,
in Violation of Title IX of the Education Amendments of 1972**
*Against Defendant CSDB and Defendant Board*

203.    Plaintiff realleges and incorporates, by reference, all previous paragraphs of the Complaint herein.

204.    Defendants CSDB and Board were deliberately indifferent to Plaintiff's rights under Title IX following the September 18, 2024, assault.

205.    The September 18, 2024, incident occurred while CSDB's staff member was in the classroom.

206.    Defendants CSDB and Board waited three days to report the September 18 assault to law enforcement.

207.    Defendants CSDB and Board failed to report the September 18 assault to Plaintiff's mother, instead informing her that Plaintiff may have been involved in an incident that day.

208.    Defendants CSDB's and Board's response were clearly unreasonable and inadequate.

209. The conduct of Defendants CSDB and Board constitutes deliberate indifference, and wanton and reckless disregard for the rights and safety of Plaintiff.

210. Defendants CSDB and Board were deliberately indifferent to the sexual harassment of Plaintiff, with actual knowledge of the same, and said harassment was so severe, pervasive, and objectively offensive as to deprive Plaintiff of equal access to the educational benefits and opportunities of CSDB.

211. Plaintiff was actually deprived of access to CSDB's educational benefits and opportunities because she could not attend school from September 2024 to April 2025 due to the sexual assaults and harassment she suffered.

212. Defendants failed to provide Plaintiff with an adequate safety plan in a timely fashion, delaying her return to school and further depriving her of access to CSDB's educational benefits and opportunities.

213. Defendants continue to fail to provide Plaintiff with an adequate safety plan.

214. Plaintiff suffered and continues to suffer from emotional distress regarding her experience at CSDB, her well-being, and safety.

215. Defendants CSDB and Board, by and through its agents and employees' differing treatment of similarly or equally situated students on the basis of sex is engaging in unlawful and invidious discrimination.

216. Plaintiff suffered damages as a result of Defendants' deliberate indifference to her rights under Title IX.

## COUNT III

**42 U.S.C. § 1983 – Deliberate Indifference to Sex Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment**
*Against Defendants Zigler, Wright, and Emter*

217.    Plaintiff realleges and incorporates, by reference, all previous paragraphs of the Complaint herein.

218.    Plaintiff is an individual entitled to the full protection of the Equal Protection Clause of the U.S. Constitution, U.S. Const. Amend. 14, and as coequally protected by the Colorado State Constitution, Colo. Const. Art. II, Sections 3-6.

219.    The Equal Protection Clause requires government officials to treat an individual in the same manner as others in similar conditions and circumstances. U.S. Const. Amend. IX.

220.    It has been clearly established" in the 10th Circuit "since at least 1992 that a person who exercises a state's supervisory authority may be held liable for consciously acquiescing in sexually harassing conduct by a non-state actor over whom the state actor has authority." *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999).

221.    Principals and teachers are "persons" subject to liability for deliberate indifference to peer-to-peer sexual harassment by minor students. *See id.*; *Lameda v. Indep. Sch. Dist. No 29*, No. CIV-21-119-D, 2021 U.S. Dist. LEXIS 180289, at *9 (W.D. Okla. Sep. 21, 2021).

222.    Plaintiff has a clearly recognized protected interest in her right to an education free from sex-based discrimination.

223.    Defendants violated Plaintiff's constitutional right to equal protection by denying her access to and the benefits of CSDB's educational programs which are afforded to all children enrolled at CSDB.

24

224. Defendant Zigler failed to take any action to intervene or protect Plaintiff on September 18, 2024, while she was being sexually assaulted in his classroom, while he was present.

225. Defendant Zigler was deliberately indifferent because he knew or should have known that Plaintiff was being assaulted in his classroom, but did not intervene.

226. As a teacher, Defendant Zigler was an appropriate person within the meaning of § 1983 to address Plaintiff's sexual assault.

227. Defendants Wright and Emter were deliberately indifferent to Plaintiff's constitutional right to equal protection leading up to the September 18, 2024, assault.

228. Defendants Wright and Emter failed to take any proactive measures to keep Plaintiff safe at CSDB.

229. Plaintiff was repeatedly sexually assaulted, harassed, and exploited by other students at CSDB.

230. These incidents occurred on CSDB's property, during the school day.

231. As principal, Defendant Wright exercises supervisory control over activities at CSDB, student conduct, and staff conduct.

232. Defendant Wright failed to intervene to stop the ongoing sexual assaults, harassment, and exploitation of Plaintiff by L.S. and A.J. at CSDB.

233. As principal, Defendant Wright was an appropriate person within the meaning of § 1983 to address Plaintiff's ongoing sexual assaults, harassment, and exploitation during the 2042-2025 school year.

234.    As CSDB's Title IX Coordinator, Defendant Emter is responsible for ensuring that CSDB complies with Title IX.

235.    As CSDB's Title IX Coordinator, Defendant Emter was an appropriate person within the meaning of § 1983 to address Plaintiff's ongoing sexual assaults, harassment, and exploitation during the 2024-2025 school year.

236.    Defendants deliberately ignored Plaintiff's right to be free from sex-based discrimination.

237.    Defendants are not entitled to qualified immunity for their alleged acts and omissions.

238.    The acts or omissions of Defendants caused Plaintiff damages, including actual economic damages, pain and suffering, and emotional and mental suffering.

239.    The acts or omissions of Defendants Zigler, Wright, and Emter as described herein deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

240.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b), pre-judgement interest, and costs as allowable by federal law.

241.    Plaintiff is also entitled to punitive damages against Defendants pursuant to 42 U.S.C. § 1983 as Defendants acted maliciously, willfully, or with a reckless and wanton disregard for Plaintiff's constitutional rights.

**COUNT IV**

**42 U.S.C. § 1983 – Deliberate Indifference to Sex Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment**
*Against Defendants Wright and Emter*

26

242.    Plaintiff realleges and incorporates, by reference, all previous paragraphs of the Complaint herein.

243.    Defendants violated Plaintiff's constitutional right to equal protection by denying her access to and the benefits of CSDB's educational programs which are afforded to all children enrolled at CSDB.

244.    Defendants Wright and Emter were deliberately indifferent to Plaintiff's constitutional right to equal protection following the September 18, 2024, assault.

245.    Defendant Wright failed to ensure that CSDB provided an adequate safety plan within a reasonable amount of time so that Plaintiff could return to school following CSDB's report to law enforcement.

246.    Defendant Wright fails to ensure that Plaintiff's safety plan is adequate.

247.    Defendant Emter failed to ensure that CSDB complied with Title IX and failed to provide Plaintiff with timely and adequate supportive measures.

248.    Defendant Emter fails to ensure that Plaintiff's safety plan is adequate.

249.    Defendants deliberately ignored Plaintiff's right to be free from sex-based discrimination.

250.    Defendants are not entitled to qualified immunity for their alleged acts and omissions.

251.    The acts or omissions of Defendants caused Plaintiff damages, including actual economic damages, pain and suffering, and emotional and mental suffering.

252.    The acts or omissions of Defendants Wright and Emter as described herein deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

253.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b), pre-judgement interest, and costs as allowable by federal law.

254.    Plaintiff is also entitled to punitive damages against Defendants pursuant to 42 U.S.C. § 1983 as Defendants acted maliciously, willfully, or with a reckless and wanton disregard for Plaintiff's constitutional rights.

**COUNT V**

**DEFENDANTS VIOLATED SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794**
*Against Defendant CSDB and Defendant Board*

255.    Plaintiff realleges and incorporates, by reference, all previous paragraphs of the Complaint herein.

256.    Pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its regulation "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794.

257.    "[I]ntentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999).

258.     To prevail on a Section 504 claim, plaintiffs must show (1) that the defendant had knowledge that a harm to a federally protected right was substantially likely and (2) a failure to act upon that knowledge. *Havens v. Colorado Dep't of Corr.*, 897 F.3d 1250, 1262 (10th Cir. 2018).

259.     Plaintiff is a person with a disability within the meaning of 29 U.S.C. § 794.

260.     On information and belief, all students referred to by pseudonym or initials herein, including L.S., A.J., and Students 1-5, are persons with a disability within the meaning of 29 U.S.C. § 794.

261.     Plaintiff was otherwise qualified to participate in Defendants' programs and benefit from its services, programs, and activities.

262.     Defendant CSDB is a recipient of federal financial assistance and operates a public elementary or secondary education program or activity. Therefore, it is a covered entity under 29 U.S.C. § 794.

263.     Defendant Board is authorized to apply for and receive federal grants and financial assistance on behalf of Defendant CSDB. C.R.S. § 22-80-103(4)(d).

264.     Defendant Board receives federal grants and financial assistance on behalf of Defendant CSDB. Therefore, it is a covered entity under 29 U.S.C. § 794.

265.     Defendants knew L.S. had previously bullied J.D. but failed to act upon that knowledge to protect J.D.

266.     Defendants knew L.S. had engaged in prior sexual misconduct with other students but failed to act upon that knowledge to protect Plaintiff.

267. Defendants ignored or minimized the threat that L.S. posed to Plaintiff's safety because of both individuals' disabilities.

268. Defendants failed to report L.S.'s misconduct to Ms. Doe on September 18, 2024.

269. Defendants' employee failed to report the September 18 sexual assault to law enforcement for three days.

270. Defendants' actions severely jeopardized Plaintiff's safety and prevented her from participating in school, both due to rendering it an unsafe environment and by allowing her to be injured, requiring extensive therapy.

271. Sexual harassment, assault, and exploitation of Plaintiff as a result of Defendants' failures altered the conditions of her education, had substantial negative effects on her ability to receive an education, and created an abusive educational environment.

272. As a result of the foregoing, Plaintiff has been excluded from participation in and/or denied benefits of the services, programs, or activities of Defendants, or has been subjected to discrimination by Defendants.

273. Plaintiff was denied benefits by reason of her disabilities and sexual harassment.

274. Defendants intentionally discriminated against Plaintiff by excluding her from participation in and denying her the benefits of Defendants' programs or activities solely because of her disability, in violation of 29 U.S.C. § 794 and its implementing regulations.

275. Defendants have otherwise intentionally discriminated against Plaintiff in violation of Section 504.

276.    As a direct and proximate cause of Defendants' violation of Section 504, Plaintiff suffered and continues to suffer severe and grievous physical, mental, and emotional suffering, humiliation, stigma, and other injuries.

## COUNT VI

**DEFENDANTS VIOLATED TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12131 *et seq.***
*Against Defendant CSDB and Defendant Board*

277.    Plaintiff realleges and incorporates, by reference, all previous paragraphs of the Complaint herein.

278.    Title II of the ADA and its regulations provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or actives of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (*see also* 28 C.F.R. Part 35).

279.    Plaintiff is a person with a disability within the meaning of 42 U.S.C. § 12102.

280.    Plaintiff was otherwise qualified to participate in Defendants' programs and benefit from its services, programs, and activities.

281.    Defendant CSDB is a public entity subject to Title II of the ADA, 42 U.S.C. § 12132.

282.    Defendant Board is a public entity subject to Title II of the ADA, 42 U.S.C. § 12132.

283.    Upon information and belief, all students referred to by pseudonym or initials herein, including L.S., A.J., and Students 1-5, are persons with a disability within the meaning of 42 U.S.C. § 12102.

284. Defendants knew L.S. had previously bullied Plaintiff but failed to act upon that knowledge to protect J.D.

285. Defendants knew L.S. had engaged in prior sexual misconduct with other students but failed to act upon that knowledge to protect Plaintiff.

286. Defendants ignored or minimized the threat that L.S. posed to Plaintiff's safety because of both individuals' disabilities.

287. Defendants failed to report L.S.'s misconduct to Ms. Doe on September 18, 2024.

288. Defendants' employee failed to report the September 18 sexual assault to law enforcement for three days.

289. Defendants' actions severely jeopardized Plaintiff's safety and prevented her from participating in school, both due to rendering it an unsafe environment and by allowing her to be injured, requiring extensive therapy.

290. Sexual harassment, assault, and exploitation of Plaintiff as a result of Defendants' failures altered the conditions of her education, had substantial negative effects on her ability to receive an education, and created an abusive educational environment.

291. As a result of the foregoing, Plaintiff has been excluded from participation in and/or denied benefits of the services, programs, or activities of Defendants, or has been subjected to discrimination by Defendants.

292. Plaintiff was denied benefits by reason of her disabilities and sexual harassment.

293. Defendants intentionally violated Plaintiff's rights under the ADA and its regulations by excluding her from participation in and denying her the benefits of Defendants'

services, programs, and activities, on the basis of disability, and by subjecting her to discrimination, in violation of 42 U.S.C. § 12132.

294.    As a direct and proximate cause of Defendants' violation of the ADA, Plaintiff suffered and continues to suffer severe and grievous physical, mental, and emotional suffering, humiliation, stigma, and other injuries.

## IV.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. Find that Defendants violated federal law;

B. Find that Plaintiff is the prevailing party;

C. Award Plaintiff punitive damages;

D. Award Plaintiff special damages for medical expenses;

E. Award Plaintiff general damages for emotional distress and pain and suffering in an amount to be established at trial;

F. Award Plaintiff compensatory damages;

G. Award Plaintiff her reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and/or other applicable statutes; and

H. Any other relief deemed necessary or appropriate.

### *PLAINTIFF REQUESTS A JURY ON ALL ISSUES SO TRIABLE*

Respectfully submitted this March 5, 2026

*/s/Igor Raykin*
Igor Raykin
Kishinevsky & Raykin, LLC
2581 S. Parker Rd., Ste. 150
720-748-8888
igor@coloradolawteam.com

/s/Kaity Tuohy
Kaity Tuohy
Kishinevsky & Raykin, LLC
2581 S. Parker Rd., Ste. 150
720-748-8888
kaity@coloradolawteam.com